## McCormick *versus* Robb.

1. In an action for breach of promise of marriage, the promise of defendant being laid to have been made before the 22d September, it was proved that the defendant, on the 20th September, called on the defendant to excuse his intended absence from his home, and also proved that the defendant subsequently, the date not being specified, admitted that he had promised to marry the plaintiff—but that the contract was broken—and further that on the 1st of October he had again said the contract was broken; it was admissible for the plaintiff to prove that she had invited the witness to the wedding to take place on 22d September, as the jury might have properly inferred that the promise was previous to the time designated by the plaintiff for the wedding.

2. The declarations of the son of the plaintiff, as to the reasons for his mother breaking up housekeeping, were not admissible on part of the defendant as evidence of the general design of the family in breaking up housekeeping. Such general design was not material in the case; and, if it were, it could not be shown by hearsay.

3. It was for the jury to decide whether the *plaintiff* was willing and ready and offered to marry the defendant.

4. After the defendant declared the contract at an end, it was not requisite for the plaintiff to make a formal offer to marry the defendant before bringing suit.

ERROR to the Common Pleas of *Allegheny county*.

This was an action on the case by Sarah M. Robb against William McCormick, for breach of promise of marriage, brought to November Term, 1853. There were several counts in the *narr.* In the first count it was alleged that the defendant promised to marry the plaintiff on the 22d September, 1852.

On part of the plaintiff, a witness testified that he saw the defendant visiting at the house of the plaintiff before the 22d September, 1853; saw him there three or four times. The plaintiff had a son and two daughters.

Another witness testified that on the 20th September, 1853, the defendant called to see the plaintiff on a visit, and she was absent. The defendant told the witness that he had been summoned to go to Cleveland, and he thought it would be painful to her, under the circumstances, for him to go away without letting her know, and he wished the witness to tell her.

The witness further said that *again* he saw the defendant at his own house, and told him that he came, at the request of the plaintiff, to see him about the marriage contract pending between him and the plaintiff. The defendant said the contract was *broken*. The witness asked defendant if he had not promised to marry the plaintiff, and he said he had. The witness told him that the plaintiff had given up her house and discharged her boarders. Defendant said he pitied her, but that he would make all right. The witness further stated that the 22d September was fixed for the wedding, and that the plaintiff was at home that day. She

[McCormick v. Robb.]

had made arrangements to leave her house on the day after the wedding was to take place. She gave away part of her furniture.

Another witness was called, and it was proposed to prove by her that she was invited by the plaintiff to the wedding with the defendant, which was to take place at the plaintiff's house on the 22d September, 1853.

This was objected to on the ground that there was no proof of a promise on part of defendant, prior to the date of the alleged invitation.

HAMPTON, J., was of opinion that there was evidence from which the jury might infer a promise of marriage by the defendant prior to the 22d September, 1853. The evidence was admitted.

The son of the plaintiff was examined, and testified to an interview with the defendant on the 1st of October, in which the latter said that the marriage contract was broken, and that he would take the consequences.

On the part of *the defendant*, after other testimony, it was proposed to prove that the son of the plaintiff, who had been examined on part of the plaintiff, told the witness in the month of September, before the 20th, that the reason why his mother was breaking up housekeeping was because she was going to move to Steubenville. This testimony, it was stated, was offered for the purpose of showing, by members of the family, the general design of the family in breaking up housekeeping. The evidence was rejected.

The jury were instructed, in reply to the three first points submitted on part of plaintiff, that if there was a marriage contract which the plaintiff was ready and willing to perform, but which was broken by the defendant, she was entitled to recover. That such contract need not be proved by witnesses who were present when it was made, but that it might be shown either by the admissions of the defendant, or by circumstances from which it might be inferred; and thirdly, that if the jury believed the evidence of the second witness examined, and of the son of the plaintiff, the admissions of the defendant, as testified to by them, were evidence of the existence of a marriage contract. And in reply to the third point submitted on part of *defendant*, the Court further charged, that it was a question of fact *for the jury* whether the plaintiff was ready and willing, and offered to marry the defendant. In reply to the fourth point, the Court charged, that if a contract of marriage existed prior to the 22d September, and that the parties had appointed that day for the celebration of the marriage; that the plaintiff was ready to perform, but that the defendant neglected and refused to attend, for the reason that he had changed his mind and never intended to fulfil the contract, and subsequently declared the contract broken off, the plaintiff was not bound to tender a compliance before suit brought.

April, 1854, verdict for plaintiff for $1500.

[McCormick *v.* Robb.]

The answers referred to were assigned for error.

*Black* and *McCandless*, for plaintiff in error.—It was, *inter alia*, contended that though the assent of *the plaintiff* may be made out by circumstantial evidence, yet there must be proof of an *express promise* by the defendant: 6 *Modern*, Hutton *v.* Hansell; 2 *Barr* 83; 1 *Harris* 334, Moritz *v.* Melhorn.

There should have been an offer by the plaintiff to marry, and a refusal by the defendant: *Saunders on Pl. & Ev.* 348; 2 *Car. & P.* 631; *Addison on Contracts* 579; 2 *Barr* 83.

*Stanton* and *Shaler*, for defendant in error.—Before the evidence objected to as to the invitation to the wedding, evidence had been given from which a promise of marriage might have been inferred, viz., the defendant's visits to the plaintiff, and the circumstances of his call on the 20th September to account for his intended absence.

In an action for breach of promise, an express promise need not be proved: 2 *Starkie's Ev.* 941; 6 *Mod.* 172; *Holt* 458. A promise may be inferred from those circumstances which usually accompany such engagements: 15 *Mass.* 1. The previous visits of the defendant, and his call on the 20th September, and statement than made, indicated a contract of marriage prior to the 22d September, and on the 1st October the defendant declared the contract was broken; and the defendant never having had any interview with the plaintiff after the 20th September, the contract which was broken must have existed before that time. His declaration dispensed with any further offer on part of plaintiff. Her readiness and willingness before, and on the 22d September, was shown by her preparations for the occasion, and the other circumstances of the case.

The opinion of the Court was delivered by

KNOX, J.—This was an action of trespass on the case by Sarah M. Robb against William McCormick, for breach of marriage promise. The plaintiff recovered $1500 damages.

The first bill of exceptions was to the admission of testimony that the plaintiff had invited the witness to her wedding with the defendant, which was to take place at the plaintiff's house, on the 22d day of September, 1853. This evidence was offered to prove mutuality of promise and readiness on the part of the plaintiff to comply with the contract. It was objected to, on the ground that there was no proof of a promise on behalf of the defendant antecedent to the date of the alleged invitation. This objection was not well taken. There was evidence of the defendant's admission that he had promised to marry the plaintiff, and although the time of the contract was not mentioned, the jury might well infer that

[McCormick *v.* Robb.]

it was previous to the 22d of September, 1853. The objection to the reception of the evidence was special; but had it been general it would not have availed the defendant, as the evidence was competent for the purpose for which it was offered.

The declarations of the son as to the reasons why his mother broke up housekeeping, were clearly incompetent. They were offered, as it is said, in the bill of exceptions, "for the purpose of showing by members of the family the general design of the family in breaking up housekeeping." The general design of the family had nothing to do with the question, and if it had, such general design could not be shown by hearsay.

It is unnecessary to examine the errors assigned upon the charge in detail. It was for the jury to determine "whether the plaintiff was willing and ready, and offered to marry the defendant, or not;" and so the Court told them. After the defendant declared the contract at an end, the plaintiff was not required to make a formal offer to perform on her part before bringing suit.

We see no reason for interfering with this judgment.

Judgment affirmed.